UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


TIFFANY STIRE                                    CIVIL ACTION

VERSUS                                           NO: 12-2982

JASON WATSON, ET AL.                             SECTION: "R"


### ORDER AND REASONS

Defendants Marina Cove Condominium Association ("Marina Cove") and Debbie Rutherford move to dismiss plaintiff's complaint.[1] Defendant First Financial Insurance Company moves to join the other defendants' motion to dismiss.[2] For the following reasons, defendants' motion to dismiss is granted in part and denied in part. Stire's federal claims against the defendants are dismissed, but the Court maintains supplemental jurisdiction over Stire's state law claims. Further, First Financial's motion is granted.

I.    BACKGROUND

Tiffany Stire and her husband owned a condominium at Marina Cove Condominiums in Slidell, Louisiana.[3] Stire was behind on her condominium fees, and Debbie Rutherford, Marina Cove's president, informed Stire that she could not use the common area facilities

---

[1] R. Doc. 28.

[2] R. Doc. 30.

[3] R. Doc. 1 at 3.

such as the pool.[4] Stire apparently ignored these restrictions, and Rutherford called the St. Tammany Parish Sheriff's office.[5] Deputy Sheriff Jason Watson came to the scene and arrested Stire.[6] Stire alleges that Watson pushed her down the stairs and caused her various injuries.[7]

Stire attempts to state five claims. First, she sues Marina Cove and Rutherford for conspiring with defendants Deputy Sheriff Watson and Sheriff Jack Strain to deprive her of her constitutional rights under 42 U.S.C. § 1983. Second, she claims that Rutherford and Marina Cove conspired with Watson and Strain to collect fees in violation of state and federal law. Third, she sues Watson and Strain under 42 U.S.C § 1983 for executing an unconstitutional arrest. Fourth, she sues Watson and Strain for other constitutional violations under 42 U.S.C. § 1983. Fifth, she sues Rutherford and Marina Cove for violating the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p.[8] Peppered throughout these claims are various mentions of possible state law actions for assault, battery, negligence, and false arrest against all defendants.

---

[4] *Id.* at 4.

[5] *Id.*

[6] *Id.* at 5.

[7] *Id.*

[8] *Id.* at 16.

Defendants Rutherford and Marina Cove move to dismiss Stire's federal claims against them for failure to state a claim, and dismiss Stire's state law claims against them for lack of subject matter jurisdiction.[9] Marina Cove's insurer moves to join the other defendants' motion to dismiss.[10]

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need

---

[9] R. Doc. 28.

[10] R. Doc. 30.

not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

**III. DISCUSSION**

Stire brings federal claims against Rutherford and Marina Cove for violations of § 1983 and for violations of the Fair Debt Collection Practices Act. Stire does not adequately plead either of these claims.

**A.   Stire Fails To State a § 1983 Claim**

Title 42, United States Code, Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under the color of state law. 42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To establish liability in a Section 1983 action, the plaintiff must prove "(1)

a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

Stire does not dispute that Rutherford and Marina Cove are private actors. Nevertheless, a private citizen may be held liable under Section 1983 when "the challenged conduct [is] 'fairly attributable to the State.'" *Glotfelty v. Karas*, No. 12-30532, 2013 WL 600253, at *3 (5th Cir. Feb. 15, 2013) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)). A plaintiff must show:

> (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor.

*Id.* "A plaintiff can make such a showing by demonstrating that the private citizen was a willful participant in joint activity with the State or its agents," *id.*, or by demonstrating "that the citizen conspired with or acted in concert with state actors." *Id.* at *4 ((quoting *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989)) (internal quotation marks omitted); *see also Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008).

Stire's Section 1983 claims allege that Rutherford and Marina Cove "conspired and jointly acted" with Deputy Watson and

5

Sheriff Strain to collect fees in violation of federal law[11] and violate her Fifth and Fourteenth Amendment rights.[12]

To state that Marina Cove and Rutherford willfully participated or conspired with the State, Stire "must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Glotfelty*, No. 12–30532, 2013 WL 600253, at \*4 (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004)) (internal quotation marks omitted). Stire must "allege specific facts to show an agreement." *Tebo*, 550 F.3d at 496; *Priester*, 354 F.3d at 420. The Fifth Circuit has expanded on the state actor doctrine in the context of unlawful arrests. Specifically, Stire must allege "the existence of a 'preconceived plan' for the authorities to arrest the person without investigation, 'merely because he was designated for arrest by the private party.'" *Glotfelty*, 2013 WL 600253, at \*4 (quoting *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985)).

Stire fails to allege the requisite agreement between Marina Cove, Rutherford, and Watson or Strain. Nor does Stire allege that there was a "preconceived plan" for Watson to arrest Stire, "merely because [Rutherford] designated [Stire] for arrest." *Glotfelty*, 2013 WL 600253, at \*5. She alleges that Rutherford

---

[11] R. Doc. 1 at 9–10.

[12] *Id.* at 9, 11.

"contacted the St. Tammany Parish Sheriff's office . . . and made false claims" about Stire,[13] "requested the illegal arrest,"[14] and that Rutherford "personally directed" the arrest and "supervised with glee."[15] Stire also asserts that the defendants "jointly conspired to arrest petitioner,"[16] "acted together with deliberate indifference and callous disregard of Plaintiff's rights,"[17] and "conspired and jointly acted to falsely arrest [Stire] to collect condominium fees."[18] These assertions are legal conclusions unsupported by facts and do not plausibly suggest an agreement between the defendants to violate Stire's rights.

In fact, Stire alleges that Rutherford "made false claims" to Watson that Stire was trespassing and disturbing the peace, and "procured" him to arrest Stire.[19] That Rutherford allegedly lied to Watson, is *inconsistent* with an agreement between defendants to deprive Stire of her rights through an unlawful arrest or to collect a debt in violation of federal law. *See*

---

[13] *Id.* at 4.

[14] *Id.* at 6.

[15] *Id.* at 4.

[16] *Id.* at 7.

[17] *Id.* at 9.

[18] *Id.* at 9-10.

[19] *Id.* at 4.

*Priester*, 354 F.3d at 420 (holding that plaintiff failed to state a Section 1983 conspiracy claim against private actor when the complaint "does not allege an agreement" or allege "specific facts to show an agreement").

Stire relies on *Morris v. Dillard Department Stores, Inc.* for the proposition that a private actor can be found acting in concert with state authorities if she is the sole source of information on which a police officer relies for an arrest without making an independent investigation. 277 F.3d 743, 748-49 (5th Cir. 2001). As explained in *Singleton v. St. Charles Parish Sheriff's Department*, the test outlined in *Morris* "is designed to determine if 'the police pursuant to a preconceived plan, would arrest any person merely because he was designated for arrest by the store." 306 F. App'x 195, 199 (5th Cir. 2009) (per curiam).

Stire makes no factual allegations suggesting that Watson and Rutherford acted in accordance with a preconceived plan. Indeed, Stire alleges that at the scene of the arrest "Watson reacted to the remark about calling his supervisor, 'You threatened my job, you resisted arrest.'"[20] These facts suggest that Watson was reacting to Stire's behavior when deciding to arrest her for resisting arrest, based on his "first-hand" and "independent observation." *Id.* Stire fails to allege essential

---

[20] R. Doc. 1 at 5. This statement attributed to Watson also contradicts Stire's allegation later in the complaint that she was not informed of the grounds for her arrest. *Id.* at 10.

8

elements of her claims, and her allegations of conspiracy amount to nothing more than naked assertions. *See, e.g.*, *Twombly*, 550 U.S. at 556-57; *Priester*, 354 F.3d at 420. Accordingly, Stire fails to advance a plausible claim that Rutherford or Marina Cove acted under color of state law to sustain her Section 1983 claims against them.

**B.   Stire Fails To State a Claim Under the Fair Debt Collection Practices Act**

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The FDCPA provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *Gonzalez*, 577 F.3d at 603. For the purposes of the FDCPA, the term "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Stire alleges that Rutherford "directed and was the procuring cause of the false charges being filed solely to illegally collect a debt."[21] She asserts that Rutherford "[gave] false statements to have [Stire] arrested and maliciously prosecuted."[22] She alleges that Rutherford "sen[t] out demand letters seeing [sic] to collect a debt on her employers [sic] law firm letterhead to Plaintiff without having the debt collection claims reviewed by an attorney, but sent the legal demand herself, who is a paralegal, and not an attorney."[23] Stire also alleges that Rutherford "falsely threatened an injunction suit and legal action."[24]

Importantly, Stire alleges that all the while, Rutherford acted "as the President of the Marina Cove Condominium Association"[25] to "collect a debt to the Defendant Marina Cove Condominium Association."[26] Under § 1692a(6)(A), a "debt collector does not include "any officer or employee of a creditor who, in the name of the creditor, collect[s] debts for such creditor." Because Rutherford attempted to collect a debt owed to

---

[21] R. Doc. 1 at 6.

[22] *Id.* at 14.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 6.

Marina Cove in her capacity as its president, the provisions of the FDCPA are not applicable. *See HSBC Bank Nev., N.A. v. Murungi*, No. 10-1527, 2010 WL 3170736, at *4 (E.D. La. Aug. 11, 2010) (dismissing FDCPA claim with prejudice where bank attempted to collect what was owed to it in its capacity as a creditor).

Nowhere in Count V of her complaint does Stire allege that Rutherford or Marina Cove qualify as debt collectors under the FDCPA.[27] Nevertheless, the term "debt collector" includes any creditor who, while collecting his own debts, "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Stire argues that Rutherford was a debt collector because she used a name other than her own, "which would indicate that a third person is collecting or attempting to collect such debts." *Id.* She alleges that Rutherford "sent out demand letters seeing [sic] to collect a debt on her employers [sic] law firm letterhead to Plaintiff without having the debt collection claims reviewed by an attorney, but sent the legal demand herself, who is a paralegal, and not an attorney."[28]

This Court reviews "any potential deception in the letter[s] under an unsophisticated or least sophisticated consumer standard." *McMurray v. ProCollect, Inc.*, 68 F.3d 665, 669 (5th

---

[27] *Id.* at 13-14.

[28] *Id.*

Cir. 2012). This standard of review "assume[s] that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.* When construing a demand letter to determine whether it violates the FDCPA by misleading a debtor to believe that a lawyer is involved, a court "analyze[s] whether the letter is misleading as a whole." *Gonzalez*, 577 F.3d at 607.

Stire attached the relevant communications to her complaint. The Court may therefore consider these communications on a motion to dismiss.[29] Further, to the extent that Stire's complaint does allege that defendants are "debt collectors," when "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

---

[29] R. Docs. 1-7, 1-9. In considering a motion to dismiss for failure to state a claim, the Court typically must limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (finding that the district court properly considered documents not attached to the complaint in ruling on a Rule 12(c) motion). The Court also may consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted). Here, Stire attaches the communications that are the basis for her claims to her complaint.

Stire relies on two communications to argue that defendants were indicating that a third person was collecting or attempting to collect her debts. First, Stire relies on Rutherford's letter revoking Stire's access to the pool.[30] This letter was sent on Marina Cove letterhead, and Rutherford signed the letter as president of Marina Cove.[31] Plainly, this letter may not be a basis for Stire's claims as it does not indicate that a third party is collecting Stire's debts.

Second, Stire relies on a series of emails between Rutherford and Stire's husband, Shane McClanahan.[32] Rutherford works as a legal secretary at a law firm, and Stire argues that Rutherford was attempting to indicate that her law firm was collecting the debt because Rutherford sent these emails from her work email.

There are multiple problems with Stire's argument. First, the emails were sent to McClanahan, not Stire. McClanahan is not a party to this suit. Second, Rutherford signed an email in the chain as "President, MCCA," and each email noted that her position at the firm is "Legal Assistant/Secretary."[33] Third, it

---

[30] R. Doc. 1-7 at 1.

[31] *Id.*

[32] R. Doc. 1-9.

[33] R. Doc. 1-9 at 4.

was McClanahan, not Rutherford who initiated this email chain.[34]
On May 21, 2012, McClanahan emailed Rutherford informing her of
his intention to pay his debts and asking Rutherford to email him
a statement so that he could submit it with payment of his
debts.[35] On May 22, 2012, Rutherford responded and asserted that
she "scheduled a meeting with an attorney to file an injunction"
to enforce the pool restrictions.[36] Then, on May 29, 2012,
Rutherford emailed McClanahan the ledger sheet he requested and
signed the email as president of Marina Cove.[37]

Even under the deferential unsophisticated consumer
standard, it is not plausible that Rutherford was attempting to
indicate that her law firm was collecting the debt. Unlike a
formal demand letter sent on a law firm's letterhead and signed
by an attorney, Rutherford sent an email explicitly stating that
she was a legal secretary and acting in her capacity as Marina
Cove president. *See*, *e.g.*, *Taylor v. Perrin, Landry, deLaunay &
Durand*, 103 F.3d 1232, 1236-37 (5th Cir. 1997) (finding that
creditor acted as a debt collector when it engaged an attorney to
draft and sign a demand letter on, or using the law firm's
letterhead). Further, it was McClanahan, not Rutherford who

---

[34] *Id.* at 2.

[35] *Id.*

[36] *Id.* at 1.

[37] *Id.* at 3.

initiated the email chain, and it was McClanahan who *requested* Rutherford to inform him of his outstanding debt by email. Finally, Rutherford explained in the email that she scheduled a meeting with an attorney, which is further proof that an attorney was not involved at the time of the email chain.

All of these factors preclude even the most unsophisticated consumer from interpreting Rutherford's replies as invoking a third party to collect a debt. Stire has not plausibly stated a claim that defendants are "debt collectors."

## C.   State Law Claims

Although Stire's federal claims against Marina Cove and Rutherford must be dismissed, she also states various claims against these defendants under state law.[38] Because the Court has original jurisdiction over the § 1983 claims, it may exercise supplemental jurisdiction over the state law claims if the "claims . . . are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a). Usually, this means that each separate claim "must derive from a common nucleus of operative fact[s and be] such that [a plaintiff] would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). At this point

---

[38] Further, Stire has stated federal claims against Watson and Strain.

in the litigation, the Court finds that the state law claims against the defendants arise out of the same common nucleus of operative facts as Stire's claims under Section 1983. Accordingly, the Court will exercise supplemental jurisdiction over Stire's state law claims. However, the Court can revisit its decision to exercise supplemental jurisdiction over these claims if it subsequently dismisses Stire's other federal claims. 28 U.S.C. § 1367(c).

**D.   First Financial's Motion To Join Defendants Motion To Dismiss**

As Marina Cove's insurer, First Financial's liability is derived from any claims against Marina Cove under Louisiana's Direct Action Statute. The Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269, "does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 309 (5th Cir. 2012). Because First Financial's liability is coextensive with Marina Cove's, this Court also dismisses plaintiff's federal claims against First Financial. *See Zeno v. ADM Mill. Co.*, No. 06-4326, 2008 WL 4974876, at *2 (E.D. La. Nov. 20, 2008); *see also Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 859 (E.D. La. 2011) (applying court's ruling on insured's motion to dismiss to the

16

liability insurer). Accordingly, First Financial's motion to join Marina Cove's motion to dismiss is granted.

## IV. CONCLUSION

For the above stated reasons, For the following reasons, defendants' motion to dismiss is granted in part and denied in part. Stire's federal claims against the defendants are dismissed with prejudice, but the Court maintains supplemental jurisdiction over Stire's state law claims. Further, First Financial's motion is granted.[39]

New Orleans, Louisiana, this __30th__ day of July, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[39] R. Docs. 28, 30.